UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at WINCHESTER

| | | |
|---|---|---|
| HENRY L. COKER, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No. 4:05-cv-51 |
| | ) | |
| CARRIER CORPORATION, INC., | ) | Judge Mattice |
| | ) | |
| *Defendant*. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Henry Coker brings this action against Defendant Carrier Corporation, Inc.

("Carrier"), alleging a cause of action for breach of contract. Before the Court is

Defendant's Motion for Summary Judgment.[1] For the reasons explained below,

Defendant's Motion for Summary Judgment is **GRANTED**.

## I.     STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the

Court must view the facts contained in the record and all inferences that can be drawn from

those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.*

*v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*,

---

[1]     Plaintiff asserts that he is unable to properly respond to Defendant's motion for summary judgment because such motion fails to include a separate concise statement of material facts as to which the Defendant contends there is no genuine issue for trial, as required under Tennessee Rule of Civil Procedure 56. As Defendant points out, the Federal, rather than Tennessee, Rules of Civil Procedure are the governing procedural rules in this matter, and Federal Rule of Civil Procedure 56 does not require the movant to include a separate concise statement of undisputed material facts. The Local Rules of this Court also do not require such a statement.

253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material facts exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the nonmoving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Id.* at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## II. FACTS

Viewing the record in the light most favorable to Plaintiff, the relevant facts are as follows.[2]

---

[2] Notably, Plaintiff fails to submit any evidence in support of his opposition to Defendant's motion for summary judgment. Although the response itself indicates that Plaintiff is relying on the Complaint, Plaintiff's deposition, and Plaintiff's Response to Defendant's First Set of Interrogatories, neither the deposition nor Plaintiff's interrogatory responses are appended to Plaintiff's response. Consequently, the only facts in the record on which the Court can base its decision are those submitted by Defendant in support of the instant

Prior to being terminated on July 28, 2004 (Court Doc. No. 6-14, Letter, July 28, 2004), Coker was employed by Carrier, most recently (and at all times relevant to this action) as a coil shop supervisor at Carrier's McMinnville facility (Court Doc. No. 6-2, Pl.'s Dep. 29:21, 34:2-6). In his capacity as a supervisor, Coker's duties included setting the work schedules of the employees who worked under him. (*Id.* at 34:23-25, 35: 1-12.)

Coker reported directly to Bobby Trail, who was a fabrication superintendent. (*Id.* at 34:18-22.) Gary Groves, who was a fabrication manager, was Trail's immediate supervisor. (*Id.* at 39:21-25, 40:1-2.) Christy Markgraf was a manager in the Human Resources Department. (*Id.* at 40:3-7; Letter, July 28, 2004.)

Prior to his termination, Coker's employment record had at least two blemishes. First, a number of employees working under Coker complained that Coker was showing favoritism toward two employees, Teresa Greer and Kim Locke. (Pl.'s Dep. 54:11-25, 55:1-25.) On April 14, 2003, Coker received a written counseling that detailed several problems with his leadership skills, including communication leaks to Greer and Locke, inconsistent supervisory practices stemming from his favoritism toward Greer and Locke, a breach of confidentiality, and lack of responsiveness to employees and customers. (Court Doc. No. 6-4, Letter 1-2, April 14, 2003.) Plaintiff claims that the Union caused these complaints to be made against him. (Pl.'s Dep. 43:3-8, 47:14-25.) Second, Coker's performance evaluation for 2003 indicates that he "performed at an unsatisfactory level for 2003 . . . ." (Court Doc. No. 6-5, Pl.'s Performance Feedback 5.)

---

motion.

On February 2, 2004, Carrier announced that it would be closing the McMinnville facility in 2005. (Court Doc. No. 6-6, Mahler Aff. ¶ 2.) In connection with the facility closing, employees at the facility received a memorandum entitled "Retention Benefits for Carrier M-1 Salaried Associates – Operations and Engineering." (Pl.'s Dep. 127:4-9; Court Doc. No. 6-7, Retention Benefits Memo.) The memorandum stated that each employee would receive a retention bonus at the time of separation "if employee remains continuously employed at McMinnville until released by Management" and that "[p]erformance must remain at a fully satisfactory [level] throughout retention period." (*Id.* at 1.) Coker understood the memorandum to mean that "if folks are employed there at the time of closing, they'll get that retention bonus." (Pl.'s Dep. 128:13-16.)

It is this memorandum which forms the basis of Plaintiff's claim for breach of contract. Coker explained his understanding of the memorandum: it does not state that he could only be fired for just cause (*id.* at 129:6-12), and it does not state that Coker was anything other than an at-will employee (*id.* at 129:13-16). Further, Coker stated that no one ever told him that he was anything other than an at-will employee (*id.* at 137:23-25, 138:1) and that no one ever made a verbal statement or put in writing that he could be fired only for just cause (*id.* at 138:2-6).

Prior to his termination but after the distribution of the Retention Benefits memorandum, Coker attended a meeting with Groves and Markgraf (and possibly Trail) at which they discussed reports of Coker's favoritism toward Greer. (*Id.* at 88:16-23.) Specifically, Groves and Markgraf asked Coker questions about his recording of Greer's time spent in school. (*Id.* at 89:19-25, 90:14-16.) They went over Greer's time records for three days, each of which showed that Coker's employee number had been used to credit

-4-

Greer for more time than she actually worked.  (*Id.* at 92:20-24, 93:9-12, 98:3-12, 103:22-25, 104:1-5, 107:12-25, 110:1-25, 111:1-2; Court Doc. No. 6-8, Greer Time Record, June 8, 2004; Court Doc. No. 6-12, Greer Time Record June 15, 2004; Court Doc. No. 6-13, Greer Time Record, June 25, 2004.)  Coker acknowledges that he made some mistakes regarding Greer's time records and claims that such mistakes were unintentional.  (Pl.'s Dep. 104:1-5, 105:16-24, 135:21-25, 136:1-11.)  At the conclusion of the meeting, Groves and Markgraf told Coker that he was being placed on administrative leave pending an investigation regarding his alteration of Greer's time records.  (*Id.* 114:6-9.)

On July 28, 2004, Markgraf, on behalf of Carrier, sent Coker a letter explaining that a full investigation had been conducted regarding the irregularities in time records under Coker's control and that his employment was terminated effective on that day. (Letter, July 28, 2004.)

## III.    ANALYSIS

Defendant contends that Plaintiff was an at-will employee who could be terminated at any time without cause and that, consequently, Plaintiff's firing did not constitute a breach of contract.  Plaintiff contends that the Retention Benefits memorandum created a contract that was breached when Defendant fired Plaintiff.

### A.    Applicable Law

In an action based on the Court's diversity jurisdiction, the Court must apply the conflicts law of the forum state, Tennessee.  *MacDonald v. Gen. Motors Corp.*, 110 F.3d 337, 341 (6th Cir. 1997).  "Absent a contractual choice of law provision, Tennessee courts apply the *lex loci* rule to contract causes of action," under which rule "the substantive law of the state in which the contract was executed governs disputes arising from the contract."

-5-

*In re Estate of Davis*, 184 S.W.3d 231, 234 (Tenn. Ct. App. 2004). In this instance, the employment relationship was formed in Tennessee. Accordingly, the Court will apply Tennessee law to this contract dispute.

### B. Employment Relationship Between Coker and Carrier

In Tennessee, there is a presumption that an employee is an at-will employee. *Davis v. Conn. Gen. Life Ins. Co.*, 743 F. Supp. 1273, 1280 (M.D. Tenn. 1990); *McGee v. Best*, 106 S.W.3d 48, 60 (Tenn. Ct. App. 2002). Such a presumption can be overcome only "by specific language guaranteeing a definite term of employment." *Davis*, 743 F. Supp. at 1280. An at-will employee can be terminated for good cause, bad cause, or no cause. *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997); *Forrester v. Stockstill*, 869 S.W.2d 328, 330 (Tenn. 1994); *Willard v. Golden Gallon-TN, LLC*, 154 S.W.3d 571, 575 (Tenn. Ct. App. 2004).

There is no provision in the Retention Benefits memorandum that specifically guarantees Plaintiff a definite term of employment; to the contrary, the memorandum states that Plaintiff would receive the retention bonus only "if [he] remain[ed] continuously employed at McMinnville until released by Management." (Retention Benefits Memo. at 1.) The memorandum does not guarantee that Plaintiff will remain employed throughout the transition period; rather, it states that Plaintiff will receive the retention bonus <u>if</u> he remains employed for that period of time, which he did not. Further, Plaintiff specifically acknowledges that he was never told that he was anything other than an at-will employee and that the Retention Benefits memorandum does not state, nor does any other written document that he is aware of state, that he may be terminated only for cause. Thus, in accordance with Plaintiff's own admission, and without evidence of any specific language

-6-

guaranteeing a definite term of employment, the Court concludes that Plaintiff was an at-will employee.

Plaintiff relies on two theories to claim that, in spite of the at-will employment relationship between Carrier and Coker, Carrier breached a contract with Plaintiff. First, Plaintiff asserts that Carrier violated the implied covenant of good faith and fair dealing. Plaintiff's contention fails, however, based on previous interpretations by Tennessee courts of the implied covenant of good faith and fair dealing. In *Goot v. Metropolitan Government of Nashville & Davidson County*, the Court of Appeals of Tennessee explained that "the implied duty of good faith and fair dealing cannot modify the employment-at-will doctrine and, therefore, . . . an employer does not breach its implied duty of good faith and fair dealing when it discharges an at-will employee for any reason." No. M2003-02013-COA-R3-CV, 2005 WL 3031638, at *8 (Tenn. Ct. App. Nov. 9, 2005). The Court of Appeals has also stated that there "is no implied covenant of good faith and fair dealing in an employee-at-will contract." *McGee*, 106 S.W.3d at 67. Thus, because Plaintiff was an at-will employee, the implied covenant of good faith and fair dealing is irrelevant in the instant case and cannot provide a basis for Plaintiff's breach of contract claim.

Second, in his response in opposition to Defendant's motion for summary judgment, Plaintiff argues, under the theory of promissory estoppel, that Plaintiff relied to his detriment on the promise of continued employment in the Retention Benefits memorandum.[3] Tennessee courts, however, have rejected the application of promissory estoppel to overcome the presumption of at-will employment. *Adcox v. SCT Products*, No. 01A01-

---

[3]     Although Tennessee law governs this dispute, Plaintiff cites only Ohio law in support of his argument regarding the application of promissory estoppel.

-7-

9703-CV-00123, 1997 WL 638275, at *4 n.1 (Tenn. Ct. App. Oct. 17, 1997); *Plumley Rubber Co. v. Alexander*, 1989 WL 105631, at *3 (Tenn. Ct. App. Sept. 12, 1989).

Thus, both of Plaintiff's theories fail to establish that Plaintiff was anything other than an at-will employee, and the Court concludes that Plaintiff was, in fact, an at-will employee at all times and could be terminated for good cause, bad cause, or no cause. Accordingly, Plaintiff's breach of contract claim, which is premised solely on the theory that he could be terminated only for cause, fails as a matter of law, and Defendant's Motion for Summary Judgment must be granted. *See McGee*, 106 S.W.3d at 60.

## IV. CONCLUSION

For the reasons explained above, Defendant's Motion for Summary Judgment [Court Doc. No. 5] is **GRANTED**, and Plaintiff's claims are **DISMISSED WITH PREJUDICE**. In accordance with Federal Rule of Civil Procedure 54(d)(1), Defendant is entitled to recover its costs of this action.

The Clerk shall close the file in this case.

SO ORDERED this 23rd day of May, 2006.

*s/ Harry S. Mattice, Jr.*
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE